UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


INTERNATIONAL UNION OF              )
OPERATING ENGINEERS LOCAL 98        )
HEALTH AND WELFARE FUND,            )
ET AL.,                             )
        Plaintiffs,                 )
                                    )
                v.                  )   C.A. No. 12-cv-30192-MAP
                                    )
S&R CORPORATION,                    )
        Defendant.                  )


            **MEMORANDUM AND ORDER REGARDING**
       **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
                **AND ATTORNEYS' FEES AND COSTS AND**
         **DEFENDANT'S MOTION TO CONSIDER ARBITRATION AWARD**
                      (Dkt. Nos. 72 & 93)

                       March 23, 2015

PONSOR, U.S.D.J.

                     I.   INTRODUCTION

    Plaintiffs[1] bring this action pursuant to the Employee

---

    [1] Plaintiffs are: Barbara Lane, Administrative Fund Manager of the International Union of Operating Engineers Local 98 ("Local 98") Annuity Fund; Local 98 Pension Fund, Local 98 Health and Welfare Fund, and Local 98 Apprenticeship and Training Fund ("Funds"); Donald Mason and Eugene Melville, Jr., Trustees of the Local 98 Employers Cooperative Trust Fund ("ECT"); Michael Fanning, the Chief Executive Officer of the Central Pension Fund; and Eugene Melville, Jr., the Business Manager of the Local 98, AFL-CIO ("Union").

Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. §§ 515 & 502(g)(2), and Labor-Management Relations Act of 1947("LMRA"), 28 U.S.C. § 185, to compel Defendant S&R Corporation to produce certain unredacted books and records for audit. The complaint offers two counts: Count I for failure and refusal to produce all of its books and records for an audit, as required under the Collective Bargaining Agreement (CBA) and Declarations of Trust, as well as for payment of any contributions determined to be delinquent as a result of the audit; and Count II for equitable relief, enjoining Defendant from violating the Agreement, the Trust policies, and ERISA and compelling Defendant to produce the requested records and to pay any delinquent contributions.

Plaintiffs have filed a motion for partial summary judgment, attorneys' fees, and costs. (Dkt. No. 72.) Defendant opposes and has also filed a motion requesting the court to consider a recent arbitration award between the parties. (Dkt. No. 93.) For the reasons that follow, the court will allow Plaintiffs' motion and deny Defendant's motion.

## II. BACKGROUND

The facts are recited in the light most favorable to the non-moving party, as required by Fed. R. Civ. P. 56.

### A. Facts

In June 2010, Defendant entered into a CBA with the Union (the Hoisting & Portable Engineers, Local 98 and the International Union of Operating Engineers, AFL-CIO).[2] Defendant committed to participating in several trust funds, including the Plaintiff Funds. The Funds' declaration gave to the Trustees of the Funds the "right to inspect at all reasonable times, the individual payroll records and such other records of an Employer as are deemed necessary and pertinent to determine whether such Employer is making due and full payment of its Employer Contributions." (Dkt. No. 12, Attach. 1 at 10.) Defendant agreed "to be bound by the [CBA] and Declaration of Trust entered into as of September 7, 1960, establishing the Central Pension Fund of the [Union] and by any amendments to said Trust Agreement." (Id. at 11.)

The CBA also contained provisions governing situations

---

[2] The CBA at issue terminated May 31, 2013.

when the Trustees of the Fund could not agree.  Under those circumstances, "the arbitration provisions contained in the Pension Protection Act will be activated and implemented on a timely basis.  Additionally, any applicable dispute mechanisms provided for in the Funds Trust Agreements may be utilized."  (Id. at 12.)  The arbitration provisions of the CBA state that "[i]n any case of violation, misunderstanding, disagreement or difference in the interpretation of this [CBA] by either party, either party shall refer the matter to the Business Agent."  (Dkt. No. 12, Attach. 1 at 19.)  If the Business Agent's decision does not settle the misunderstanding, either party may refer the matter to the Grievance Committee.  If this committee cannot reach an agreement, it shall choose an Umpire to make a final decision.  If the committee cannot agree upon an Umpire, "the matter in dispute shall be referred to the American Arbitration Association."  (Id.)

Each of the Plaintiff Trusts has a "Restated Agreement and Declaration of Trust" memorializing the agreements between the Union and all Employers who are or become

parties to the plan.[3]  (See, e.g., Dkt. No. 31, Attach. 2 at 9.)  The Trust agreements give the Trustees, or their duly-appointed representative, "the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled."  (Id. at 10.)  Trustees are also empowered to institute legal or administrative proceedings for the purpose of collecting such payments, money and property, should they determine that institution of these proceedings is in the best interest of the Trust.  (Id. at 10-11.)  For the purposes of proper trust oversight, Employers must promptly furnish on demand whatever information the Trustees "may reasonably require in connection with the administration of the Trust Fund."  (Id. at 11.)  Finally, the trust documents provide a collections policy, which states that an employer is liable for attorneys' fees and costs incurred by the Funds in engaging legal services to obtain an audit or to access documents necessary for an audit.  (Funds Collection Policy

---

[3] The language for each of the declarations is largely the same.  The following quoted sections come from the Pension Fund's trust declaration.  (Dkt. No. 31, Attach. 2.)

§ 2, Dkt. No. 33, Attach. 2 at 69-70.)

Plaintiff Funds are jointly-administered benefit plans, which is to say their boards comprise both Trustees appointed by the union and Trustees appointed by the employer or management. (Schweitzer Aff. ¶¶ 4-8, Dkt. No. 23, Attach. 2 at 2-3.) The Local 98 Funds Board of Trustees holds the responsibility to implement the collections policy. (Id. ¶ 10.) On June 28, 2012, the Board of Trustees met via conference call. (Minutes, Dkt. 23, Attach. 2 at 74.) Present at that meeting were three union Trustees and three employer Trustees. (Id.) At that time, they unanimously authorized commencement of this legal action against Defendant for the purposes of compelling production of documents and an audit. (Id. at 84; Schweitzer Aff. ¶ 16.)

B. <u>Procedural History</u>

On November 12, 2012, Plaintiffs filed their complaint, alleging that Defendant had not supplied, and continued to refuse to supply, all of its books and records for the period January 1, 2006, to date, for an audit for the Fringe Benefit Fund. Additionally, or alternatively, Plaintiffs

alleged that Defendant had failed to timely remit contributions, deductions, and reports to Plaintiffs. Defendant's Answer denied that it had refused to provide the requested documents; in fact, Defendant had offered to produce all appropriate records, but with certain confidential information redacted. Defendant further alleged that this litigation had been improperly instituted, because the management Trustees, despite the unanimous vote approving it, supposedly never authorized this action. Furthermore, Defendant brought a counterclaim against Plaintiffs alleging that the primary issue in Plaintiffs' complaint -- that certain documents could not be redacted -- was subject to the arbitration provision of the CBA. (Answer & Countercl. ¶ 3, Dkt. No. 8 at 4.)

On January 17, 2013, Defendant filed a motion to dismiss, or alternatively to stay the action pending referral of the dispute to arbitration. (Dkt. No. 11.) Plaintiffs opposed.[4] Before argument on Defendant's motion

---

[4] Plaintiffs also filed a motion to strike affidavits relied upon by Defendant in its motion to dismiss. (Dkt. No. 24.) The court granted this motion on September 30, 2013. (Dkt. No. 48.)

7

to dismiss, on May 25, 2013, Plaintiffs filed their first motion for partial summary judgment (Dkt. No. 31), which Defendant opposed. In support of their summary judgment motion, Plaintiffs supplied the affidavit of one of the Funds' auditors, who averred that the unredacted documents sought in this suit were necessary for an effective audit and that the review of these unredacted documents was consistent with industry standards. (Shannon Aff. ¶¶ 5-7, Dkt. No. 31, Attach. 4 at 4.) In September 2013, the court heard argument on both motions, after which the court denied Defendant's motion to stay and delayed ruling on Plaintiffs' motion for summary judgment until after the parties attempted to negotiate a protective order. (Dkt. Nos. 48 & 49.) The parties succeeded and submitted a confidentiality stipulation and order, which the court entered on November 12, 2013.

During this period, the question of whether employers should be permitted to redact certain information from the documents supplied for the auditing process continued to be an issue of contention between the employer Trustees and the union Trustees on the Board. Accordingly, pursuant to the

CBA, the issue was submitted to arbitration. Defendant again moved to stay the action (Dkt. No. 50), arguing that the court should wait to see if the issue would be resolved in arbitration. Plaintiffs opposed, asserting that any arbitration decision would only apply prospectively and not cover the current dispute.

On December 16, 2013, the parties appeared before the court for argument on the motion to stay. The court again delayed action, instead ordering the parties to negotiate, as well as to explore the possibly of conducting depositions of the employer Trustees on the issue whether any arbitration award would apply to this dispute. (Dkt. No. 60.) In February 2014, the parties reported separately that they could reach no agreement on the arbitration issue; Plaintiffs asked the court to rule on their motion for summary judgment. On March 3, 2014, the court denied Plaintiffs' earlier partial summary judgment motion without prejudice, as well as Defendant's motion to stay, and gave the parties until April 4, 2014, to depose the employer Trustees on the issue of whether any arbitration decision would apply to this action, or would have only prospective

9

effect. (Dkt. No. 71.)

On May 5, 2014, after those depositions took place, Plaintiffs renewed their motion for summary judgment, (Dkt. No. 72), which Defendant again opposed. As before, Plaintiffs argued that the Trustees authorized this action to access unredacted documents for an audit and that the depositions of the employer Trustees did not establish that any employer-favorable arbitration decision would apply to the earlier-filed action here. Defendant countered that whether the Trustees intended the arbitration decision to apply to this case was a disputed issue of material fact.[5]

On December 5, 2014, the Fund Trustees adopted a revised audit protocol; the revision was a product of the arbitration process. The revised protocol now allows certain non-owner-operated employers to submit a somewhat limited class of redacted documents as part of a compliance

---

[5] Defendant also moved to take further depositions of the management (employer) Trustees. (Dkt. No. 79.) On June 30, 2014, Magistrate Judge Kenneth P. Neiman denied Defendant's motion. (Dkt. No. 84.) Defendant objected to his ruling, and the court overruled this objection on July 31, 2014. (Dkt. No. 88.)

10

audit.[6]  Importantly, the new protocol specifically provides that the new rules "shall have no retroactive application with respect to any matter that the Trustees have referred to the Fund Counsel to commence litigation or is in litigation as of the effective date of this Agreement." (Final Local 98 Agreement ¶ 7, Dkt. No. 95, Attach. 1 at 8.)

Subsequently, Defendant filed a motion seeking to have the court take the new protocol into account in ruling on Plaintiffs' pending motion for summary judgment, attorneys' fees, and costs, offering two arguments.  (Dkt. No. 93.) First, Defendant contends -- despite the explicit language in the protocol agreement to the contrary -- that the court should not resolve this retrospective dispute in a manner that conflicts with the prospectively-focused arbitration award.  Defendant argues that it should not be penalized for

---

[6] The new protocol permits only specified, limited redaction of documents.  Non-owner-operated employers can independently redact the amount of wages paid to up to five of the company's principal owners.  If the employer seeks to redact any other information, it has to submit complete, unredacted files to a designated "Special Reviewing Partner," who will be someone other than the auditor conducting the compliance review.  That person will determine whether the additional information can be redacted without compromising the work of the auditor.  (Final Local 98 Agreement ¶ 3, Dkt. No. 95, Attach. 1 at 7.)

taking a position that has now formally been adopted by the Trustees prospectively.  Second, Defendant asserts that it should not have to pay for all the costs and fees of this litigation, since the arbitration process effectively resolved the issue of proper redactions for the future, and Plaintiffs should not be rewarded for pursuing this litigation.

Plaintiffs have opposed Defendant's motion, pointing out that the language of the new protocol clearly states that it does not apply to current litigation.  Moreover, Plaintiffs say, even the new protocol -- which in any event only applies prospectively -- does <u>not</u> permit the breadth of redaction that Defendant are now arguing for.  For example, Defendant still seeks to redact records of any political or charitable contributions, which cannot be redacted under the new protocol.

### III.  <u>DISCUSSION</u>

The court will grant summary judgment where there is no genuine disagreement over the material facts and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);  <u>Bonneau v. Plumbers & Pipefitters Local Union 51</u>

Pension Trust Fund, 736 F.3d 33, 36 (1st Cir. 2013).

Plaintiffs seek an order from the court compelling production of the requested documents necessary for an audit, in addition to the attorneys' fees and costs of this litigation.[7] At this point, there is no question that this suit was properly initiated by the Trustees pursuant to their authority under the Trust Agreements. (Mem. & Order 2, Dkt. No. 48 ("In this case, the record is clear that the lawsuit was properly authorized.").) Additionally, it cannot be disputed that this suit does not fall under the auspices of the new arbitration-generated protocol governing redactions. (Final Local 98 Agreement 3, Dkt. No. 95, Attach. 1 ("The policies and protocols stated herein shall have no retroactive application with respect to any matter that the Trustees have referred to the Fund Counsel to commence litigation or is in litigation as of the effective date of this Agreement.").) Accordingly, the sole issue is whether, consistent with the terms of the CBA and Trust

---

[7] Plaintiffs do not at this time seek summary judgment against Defendant for the entire debt owed to Plaintiff Funds for delinquent contributions, since, without the audit, they cannot determine whether there are any delinquent contributions.

Agreements, Defendant is obligated to produce for audit the <u>unredacted</u> documents sought by Plaintiffs.

It is well established that, if the terms of a CBA or Trust agreement give Trustees the power to perform an audit and to get access to documents necessary to perform the audit, courts will enforce that contractual obligation against an employer who refuses to comply. <u>See</u> <u>Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transport, Inc.</u>, 472 U.S. 559, 581 (1985) (hereinafter "<u>Central States</u>"). Moreover, the scope of document disclosure that is necessary to permit a reasonable and proper audit must be determined by reference to standard auditing practices and to the expertise of experienced auditors. <u>Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Brockway Fast Motor Freight Co.</u>, 130 F.R.D. 314, 324 (D. Mass. 1989) (citing <u>Central States</u>, 472 U.S. at 567-68). To defeat a plaintiff fund's assertion, supported by expert testimony, that certain documents are necessary for an audit, the defendant must offer some expert analysis to rebut the position of the auditor responsible for the audit. <u>See</u> <u>id.</u>

Defendant, without any expert support, takes the

position that it may define for itself those documents necessary for carrying out the purposes of the Trust. It argues that the specific records deemed necessary by Plaintiffs' auditor -- the general ledger and cash disbursement journals -- lie outside the scope of the language of the trust agreements. See Central States, 472 U.S. at 582 (stating that a benefit plan's auditing powers are generally "limited to prudent actions furthering the legitimate purposes of the plan"). It highlights the language of Article IV, Section 4, which states, "The Trustees may, by their respective representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund." (Dkt. No. 31, Attach. 2 at 11.) Defendant contends, somehow, that this language evinces the clear intent of the CBA and trust agreements that auditors be given access only to limited payroll and employment records.

Defendant's arguments fly in the face of both the language of the pertinent documents and the law. First,

Defendant reads the CBA and trust documents selectively.  As outlined above, the Funds' declarations plainly authorize the Trustees' access to documents other than traditional payroll and employment records: they may inspect "such other records of an Employer as are deemed necessary and pertinent" for an audit.  (Dkt. No. 12, Attach. 1 at 10.) This language is clear and unambiguous.

Second, the undisputed record makes it clear that the <u>unredacted</u> records sought by Plaintiffs are necessary for the audit.  Plaintiffs have offered the detailed affidavit of William Shannon, an auditor with experience in conducting payroll and special audits for employee benefit plans. (Shannon Aff. ¶¶ 1-2, Dkt. No. 31, Attach. 4 at 2-3.)  He states, "The requested documents from audited employers are required to determine independently whether the company has properly and accurately reported the hours of bargaining unit work performed in the Union's jurisdiction."  (<u>Id.</u> at ¶ 6.)  Furthermore, Shannon explains how the names and dollar amounts on cash disbursement journals and general ledgers assist the auditors is determining whether an employer has met the obligations of the Funds.  (<u>Id.</u> ¶¶ 7-8.)  Defendant

has offered not a shred of evidence to contradict or undermine Shannon's expert opinion that the unredacted documents are necessary for the audit.[8]

Defendant's final argument is that the court should consider the arbitration settlement in reaching its decision on summary judgment, including whether to award attorneys' fees and costs. As recognized earlier, this suit was properly authorized by the Trustees, and the new protocol specifically excludes litigation, such as this one, that was already underway at the time the protocol was adopted. Significantly, the new protocol permits a much more limited scope of redaction than Defendant sought at the start of this suit. Even if the court were to consider the arbitration settlement, Defendant would nonetheless need to produce the unredacted documents sought by the auditors. (Shannon Aff. II ¶¶ 10-11, Dkt. No. 95, Attach. 1 at 3-4.)

---

[8] The record does contain the affidavit of Defendant's president, Roger Ploof, in which he states that his company has complied with other, past audits that did not require the information sought by Plaintiffs here. (Ploof Aff. ¶¶ 8-9, Dkt. No. 40, Attach. 4 at 2.) This averment, however, is not expert testimony (Ploof is not an auditor) and is irrelevant to the question whether the unredacted documents are needed here. See Trucking Emps. of N. Jersey Welfare Fund, Inc., 130 F.R.D. at 324.

Similarly, nothing in the new prospective protocol remotely undermines Plaintiffs' claim for attorneys' fees and costs. The trust documents signed by Defendant explicitly obligate it to reimburse the Funds for legal expenses related to enforcing the Funds' right to access certain employer documents. (Funds Collection Policy § 2, Dkt. No. 33, Attach. 2 at 69-70.) Defendant's position is entirely without basis in law or the record.

The undisputed facts of record and the law permit only one conclusion: the auditors require the unredacted records, and Defendant is obligated to produce them. See Central States, 472 U.S. at 581. The court will order entry of partial summary judgment compelling Defendant to produce the unredacted documents identified by the auditor, and it will award Plaintiffs reasonable attorneys' fees and costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Partial Summary Judgment and Motion for Costs and Attorneys' Fees, (Dkt. No. 72) is hereby ALLOWED. Defendant's Motion to Consider Plaintiff Fund's Redacting Arbitration Award in any Summary Judgment Determination,

(Dkt. No. 93) is hereby DENIED as moot. The court has, in fact, examined the arbitration-related protocol, as this memorandum demonstrates, and found it substantially irrelevant to the issues before it.

On or before April 30, 2015, counsel for Plaintiffs shall submit to the court supplemental materials specifying the exact amount of fees and expenses incurred in prosecuting this action to date, along with affidavits attesting to the reasonableness of the hourly rates charged by its attorneys. Counsel for Defendant may respond to this submission on or before May 30, 2015. The court will consider these submissions on the papers. Also by April 30, counsel for Plaintiffs will submit a proposed schedule for any potential further proceedings seeking payment of delinquencies, if any, revealed by the audit. Counsel for Defendant may respond by May 30. The court will thereafter determine what further proceedings are necessary.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge