UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 98 HEALTH AND WELFARE FUND, ET AL.,
Plaintiffs,

v.

S&R CORPORATION,
Defendant.

C.A. No. 12-cv-30192-MAP

MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
(Dkt. No. 100)

March 29, 2016

PONSOR, U.S.D.J.

This action has been brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. §§ 1132(a)(3) & 1145, and the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to compel Defendant S&R Corporation to produce unredacted books and records for audit.[1] After protracted and vigorous

---

[1] Plaintiffs are: Barbara Lane, Administrative Fund Manager of the International Union of Operating Engineers Local 98 Annuity Fund; Local 98 Pension Fund, Local 98 Health and Welfare Fund, and Local 98 Apprenticeship and Training Fund; Donald Mason and Eugene Melville, Jr., Trustees of the Local 98 Employers Cooperative Trust Fund; Michael Fanning, the Chief Executive Officer of the Central Pension Fund; and Eugene Melville, Jr., the Business Manager

resistence by Defendant, the court, on March 23, 2015, issued its 19-page memorandum allowing Plaintiffs' Motion for Partial Summary Judgment. The court concluded that "[t]he undisputed facts of record and the law permit only one conclusion: the auditors require the unredacted records, and Defendant is obligated to produce them." Int'l Union of Operating Eng'rs Local 98 Health & Welfare Fund v. S&R Corp., 95 F. Supp. 3d 1, 7 (D. Mass. 2015) (hereinafter S&R Corp.).

Having found that Defendant was required to comply with the audit and produce unredacted documents, the court also stated that "it will award Plaintiffs reasonable attorneys' fees and costs." Id.

On April 30, 2015, Plaintiffs duly filed their Motion for Attorney's Fees and Costs, supported by appropriate affidavits and detailed time records. Dkt. No. 100. At that time, they requested fees and costs in the amount of $90,010.42, or with adjustments to the hourly rates of paralegals and associates, $83,239.52.

The affidavit in support of the Motion for Attorney's Fees carefully detailed the basis for the claimed hourly rates, which were within the range approved by the court in other cases and supported by an independent affidavit. The

---

of the Local 98, AFL-CIO.

claim for fees properly used the well-established "lodestar" method to calculate fees. The rate for paralegals was reduced to $100 -- a rate the court had approved in previous cases -- and properly included hours expended in an effort to avoid litigation prior to filing. Fees for travel time were reduced by 50%, and the staff expenses were well supported. Based upon this, Plaintiffs' request for the adjusted total of $83,239.52, comprising $77,610.05 in fees and $5,629.47 in costs, was entirely reasonable.

As with every other aspect of this litigation, Defendant fiercely contested Plaintiffs' fee claim. After moving for extensions of time, Defendant filed, in the form of responses, oppositions to the claim for fees and costs on June 19, 2015, and again on July 30, 2015, Dkt. Nos. 106 & 110.

None of the arguments offered challenging the award of fees was persuasive. The litigation, particularly given Defendant's vigorous opposition, was not so lacking in complexity as to justify any reduction in the fee.

The equitable considerations identified by Defendant in its opposition to the fee award lacked force. Nothing in the complex negotiations to overcome Defendant's unwillingness to produce unredacted financial records justified reduction in the fees. Plaintiffs' expert

consistently and emphatically took the position that the unredacted documents were necessary for a proper audit. S&R Corp., 95 F. Supp. 3d at 7 (concluding that the uncontroverted evidence in the record established that "unredacted documents are necessary for the audit" under standard professional auditing practices). Defendant's refusal to provide the unredacted documents forced Plaintiffs to file suit and drove the attorney's fees up.[2] As the court found, Plaintiffs were perfectly correct in insisting on full disclosure.

On August 17, 2015, Plaintiffs submitted a supplemental application for attorney's fees and costs, covering additional fees incurred by Plaintiffs' counsel, as well as

---

[2] Notably, it appears from the record that Defendant's concern that provoked this litigation was unfounded. According to Defendant, it sought to redact certain books and payroll records primarily to keep private certain information, such as executive pay and charitable and political contributions, that it asserted was irrelevant to an inquiry into whether it was fulfilling its pension and welfare funding duties. However, as attested by the auditor, William Shannon, it is his practice and the practice of his firm under standard professional procedures to "maintain the confidentiality of information contained in the employer's records unless the information suggests that the employer owes contributions to the Funds." (Aff. Shannon ¶ 10, Dkt. No. 31, Attach. 4 at 5.) As it turns out, since the audit (based on the unredacted records) confirmed that Defendant in fact complied with its contractual obligations, its sensitive information remained at all times confidential -- and would have irrespective of this litigation.

$41.40 in copying expenses, from the time of the initial application through August 17, 2015, Dkt. No. 111. Plaintiffs also sought reimbursement of the auditing fee in the amount of $10,149.55.

As before, Plaintiffs have supported their claim for additional fees with detailed records, and the fees are entirely reasonable. The court therefore will award additional fees and costs of $7,185.45.

As for the cost of the audit, Defendant challenges the claimed reimbursement on the basis that the audit revealed absolutely no improprieties in Defendant’s fulfillment of its responsibilities under its contracts with Plaintiffs. Again, its argument is unpersuasive. Section 2 of the Trust Fund Collections Policy, entitled "Audit of Payroll Records," provides that audits generally occur with no charge to the Employer. However, it goes on to state explicitly, "If it is necessary for the Funds' Counsel to perform legal services for any reason, including the commencement of a lawsuit..., to obtain the audit and to compel the Employer's production of its payroll records, then in that event, the Employer shall be liable for all auditing fees [as well as attorney's fees and costs]." Collections Policy, Dkt. No. 31, Attach. 2 at 69-70. The irony of this case is, but for this litigation, Defendant

**would not have been responsible for the audit fees; with this litigation, the trust documents are clear that Defendant must pay $10,149.55, the auditing costs.**

**To summarize, the amount awarded will be fees and expenses in the amount of $90,424.97 and full reimbursement for the costs of the audit of $10,149.55, for a total of $100,574.52. Payment will be tendered by Defendant to Plaintiffs within forty-five days of the date of this order, unless Defendant chooses to file a notice of appeal of this decision.**

**It is So Ordered.**

**/s/ Michael A. Ponsor**
**MICHAEL A. PONSOR**
**U. S. District Judge**